```
                  UNITED STATES DISTRICT COURT
                FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

NANCY BELLAS,                          :
                                       :
       Plaintiff,                      :CIVIL ACTION NO. 3:11-CV-673
                                       :
       v.                              :(JUDGE CONABOY)
                                       :
WVHCS RETENTION COMPANY, et al.,       :
formerly known as WYOMING VALLEY       :
HEALTH CARE SYSTEM, INC.,              :
                                       :
and                                    :
                                       :
JAMES CARMODY, as a corporate agent    :
of WVHCS RETENTION COMPANY,            :
formerly known as WYOMING VALLEY       :
HEALTH CARE SYSTEM, INC.,              :
                                       :
       Defendants.                     :
                                       :
_____

## **MEMORANDUM**

Here we consider Defendants' Partial Motion to Dismiss/Motion to Strike Plaintiff's Amended Complaint (Doc. 15) filed on July 19, 2012, by Defendants WVHCS Retention Company ("WVHCS") and James Carmody ("Carmody") (collectively "Defendants").  With this motion, Defendants seek dismissal of the following: 1) age discrimination claim against Defendant James Carmody; 2) common law tort claim for constructive discharge; 3) defamation claim; and 4) demands for punitive damages under the ADEA and PHRA and for liquidated damages under the PHRA.  (Doc. 15 at 1-2.)  Defendants filed a supporting brief with their motion.  (Doc. 15-2.)  Plaintiff has not filed a responsive brief and the time for doing so has passed.  Therefore, this matter is ripe for disposition.  For the reasons discussed

below, Defendants' motion is granted in part and denied in part.

## I. Background[1]

Plaintiff was employed with WVHCS and its predecessor as a full-time registered nurse since approximately 1975.[2]  In October 2008, Plaintiff went to the Price Chopper in Edwardsville, Pennsylvania, at approximately 11:15 p.m. following a sixteen (16) hour shift at the hospital.  (Doc. 11 ¶ 16.)  She parked in the fire lane when she went into the store and received a ticket for doing so.  (Doc. 11 ¶ 19.)  Plaintiff avers that she paid the ticket immediately but it was returned to her because she had failed to sign the citation.  (Doc. 11 ¶ 20.)  On or about November 26, 2008, Plaintiff went to the Edwardsville Police Department to pay the fine.  (Doc. 11 ¶ 21.)  Officer Michael Lehman was the attendant in the office.  (Doc. 11 ¶ 22.)  At some time prior to December 2, 2008, someone from the Edwardsville Police Department called Lisa Goble, a representative of the Human Resources

---

[1] Because Plaintiff did not file an opposition brief to Defendants' motion, she is deemed not to oppose the motion pursuant to Local Rule 7.6 of the Local Rules of Court of the Middle District of Pennsylvania.  Therefore, the factual recitation found in Defendants' supporting brief (Doc. 15-2 at 2-3) is appropriately included in the background section of this memorandum.

[2] According to Defendants, the former Wyoming Valley Health Care System, Inc., is now known as "WVHCS-Retention Company."  The name "Wyoming Valley Health Care System" and substantially all of the assets of Wyoming Valley Health Care System, Inc., were purchased by Wilkes-Barre Holdings, LLC, an indirect, wholly-owned subsidiary of Community Health Systems, Inc., of Franklin, Tennessee, as part of a transaction effective May 1, 2009.  (Doc. 15-2 at 2 n.2.)

2

Department ("HR") of WVHCS, and alleged that Plaintiff "had caused a 'ruckus' in the Edwardsville Police Department and that she had told Officer Lehman that if he or his associates were in need of care in the Hospital Emergency Room, they would 'have to wait.'" (Doc. 11 ¶ 27.)  Plaintiff denies the allegation that she caused a ruckus.  (Doc. 11 ¶ 28.)

Plaintiff's supervisor, Norma Janosky, told Plaintiff that the Edwardsville Police Department was insinuating that she was using the hospital as a tool, and that she would most likely face disciplinary action as she was representing the hospital in this context.  (Doc. 11 ¶ 39.)  When Plaintiff denied the allegations, Plaintiff was advised to speak with James Carmody, head of the hospital's HR Department.  (Doc. 11 ¶ 40.)

Plaintiff avers that she received information that at some point before December 5, 2008, Edwardsville Police Chief David Souchick spoke to Defendant Carmody and told him that "the matter allegedly involving Plaintiff at the Edwardsville Police Department was no more than a 'misunderstanding' and that the matter should not proceed further."  (Doc. 11 ¶ 43.)  Plaintiff further avers that Defendant Carmody told Souchick that the matter was "now in the hands of HR."  (Doc. 11 ¶ 44.)

An "Agreement" concerning Plaintiff's disciplinary terms was formalized on December 11, 2008.  (Doc. 11 ¶ 59.)  Plaintiff's discipline included the following: 1) suspension from January 5,

3

2009, through January 16, 2009; 2) the suspension would be relied upon as the primary basis for any subsequent (progressive) discipline for a period of three years beginning on January 5, 2009; 3) Plaintiff would write a letter of apology to the Edwardsville Police Department; 4) neither Plaintiff nor her union would file a grievance or any such action related to the disciplinary decision; 5) the terms of the Agreement did not establish precedent or suspend, modify, or terminate any provision of the collective bargaining agreement between WVHCS-Hospital and the union; and 6) the determination by the hospital was strictly confidential.  (Doc. 11 ¶ 59.)

Defendants aver that Plaintiff was disciplined because of her statements.  (Doc. 15-2 at 2.)  Plaintiff contends that her discipline was really a result of her age and salary.  (Doc. 15-2 at 2 (citing Doc. 11 ¶¶ 61, 73).)  Plaintiff alleges that, as a result of the disciplinary action against her and the rumored "buy-out" of the hospital, she felt she was targeted for "extreme and/or unnecessary future action, including termination because of her age and longevity."  (Doc. 11 ¶ 73.)  She further explains that she felt "because of the potential sale of the Hospital, she would be a target based upon her age, her corresponding pay based upon her years of experience, and her ability to collect the amount of overtime, classifying her as one of the top five paid employees from [the Hospital]."  (Doc. 11 ¶ 74.)  Plaintiff alleges that

4

"[f]inding no other available options, a lack of meaningful and appropriate communication from the Defendants, and with a likely risk of future termination for aforesaid reasons" Plaintiff submitted a letter to her supervisor stating that she was resigning from her full-time position but wanted to remain "per diem" in both the Endoscopy Unit and Emergency Room.  (Doc. 11 ¶ 75.)

In the beginning of January 2009, layoffs were beginning to take place at the hospital in anticipation of the merger.  (Doc. 11 ¶ 84.)  On January 20, 2009, Plaintiff requested to work additional hours in the Emergency Room and she was assigned to do so.  (Doc. 11 ¶ 88.)  On January 21, Plaintiff's Endoscopy Unit supervisor, Ms. Janoski, told Plaintiff should could no longer do per-diem work in the Endoscopy Unit.  (Doc. 11 ¶ 89.)  She was told the directive came from Defendant Carmody.  (*Id.*)  On the same date, Plaintiff learned she was not allowed to work in the emergency room.  (Doc. 11 ¶ 92.)  Plaintiff learned that the disciplinary letter in her file would preclude any additional per diem or overtime work. (Doc. 11 ¶ 93.)  She states that she "immediately secured further employment at a lower level."  (Doc. 11 ¶ 94.)  The footnote inserted following this assertion notes that Plaintiff took a job at Moses Taylor Hospital on December 17, 2009.  (Doc. 11 ¶ 94 & n.3.)

In May 2009, Wyoming Valley Health Care System, Inc., transferred control of its assets to another entity, now known as

5

WVHCS Retention Company.  (Doc. 11 ¶¶ 95-96.)  Plaintiff believes that Cornelius Catena replaced Dr. William Host as Chief Executive Officer.  (Doc. 11 ¶ 98.)  In June or July of 2009, Mr. Catina told Plaintiff that, after discussing the matter with Defendant Carmody, it would not be in the hospital's best interest to rehire her.  (Doc. 11 ¶ 100.)  Plaintiff believes that Carmody represented to others that Plaintiff had a number of prior disciplinary actions against her.  (Doc. 11 ¶ 98.)

Based on these allegations, Plaintiff sets out four counts in her Amended Complaint: Count I against both Defendants for violation of the Age Discrimination in Employment Act ("ADEA"); Count II against both Defendants for violation of the Pennsylvania Human Relations Act ("PHRA"); Count III against both Defendants for Constructive Discharge; and Count IV against both Defendants for Defamation.  (Doc. 11 at 23-41.)  She filed the Amended Complaint on April 3, 2012.

Defendants filed the motion under consideration here on July 19, 2012.  (Doc. 15.)  Defendants make the following arguments: Plaintiff's ADEA claim against Defendant Carmody must be dismissed because the ADEA does not provide for individual liability (Doc. 15-2 at 4); Plaintiff's common law constructive discharge claim must be dismissed because it is preempted by the Pennsylvania Human Relations Act (*id.*); Plaintiff's defamation claim must be dismissed both because it is time-barred and Plaintiff has not identified a

6

defamatory statement (Doc. 15-2 at 5); Plaintiff's demand for punitive damages under the ADEA or PHRA must be stricken because punitive damages are not available under these statutes (Doc. 15-2 at 8); and Plaintiff's demand for liquidated damages must be stricken because these damages are not available under the PHRA (*id.*).

## **II. Discussion**

Because Plaintiff did not file a brief in opposition to Defendants' motion, pursuant to the Local Rules of Court of the Middle District of Pennsylvania, she is deemed not to oppose the motion. *See* L.R. 7.6. Even in cases where the plaintiff has not responded to a motion to dismiss, the Third Circuit Court of Appeals has instructed that a plaintiff's claims should not be dismissed before the Court analyzes the relevant factors found in *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3d Cir. 1984). *See*, *e.g.*, *Xenos v. Hawbecker*, 441 F. App'x 128, 131 (3d Cir. 2011) (not precedential) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1148 (3d Cir. 1990)).[3] As one of the relevant *Poulis* factors is the meritoriousness of the claim, we will proceed with a merits analysis.

---

[3] *Poulis* identified the following factors: 1) the extent of the party's personal responsibility; 2) prejudice to the adversary; 3) any history of dilatoriness; 4) whether the party acted willfully or in bad faith; 5) the availability of alternative sanctions; and 6) the meritoriousness of the claim or defense. 747 F.2d at 868.

7

***A.   Applicable Standards***

**1.   Motion to Dismiss Standard**

In a motion to dismiss for failure to state a claim, the defendant bears the burden of showing that no claim has been presented.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

When reviewing a complaint pursuant to a defendant's motion to dismiss for failure to state a claim filed under Federal Rule of Civil Procedure 12(b)(6), the court does so in the context of the requirement of Federal Rule of Civil Procedure 8(a)(2) which requires only "a short and plain statement of the claims showing that the pleader is entitled to relief."  The "short and plain statement" must be sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 433 (2007). *Twombly* confirmed that more is required than "labels and conclusion, and a formulaic recitation of the elements of a cause of action will not do."  550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that

8

all allegations in the complaint are true (even if doubtful in fact)."  550 U.S. at 555 (citations omitted).

In *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009), the Third Circuit Court of Appeals set out the standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions in *Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).

> "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570).  The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950.  Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted).

*McTernan,* 577 F.3d at 530.  The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan*, *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009).

> [D]istrict courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [*Iqbal*, 129 S. Ct. at 1949.]  Second, a District Court must then determine whether the facts

9

> alleged in the complaint are sufficient to
> show that the plaintiff has a "plausible
> claim for relief." *Id.* at 1950.  In other
> words, a complaint must do more than allege a
> plaintiff's entitlement to relief.  A
> complaint has to "show" such an entitlement
> with its facts. *See Philips* [*v. Co. of
> Alleghany*], 515 F.3d [224,] 234-35 [(3d
> Cir.2008 )].  As the Supreme Court instructed
> in *Iqbal*, "[w]here the well-pleaded facts do
> not permit the court to infer more than the
> mere possibility of misconduct, the complaint
> has alleged--but it has not 'show[n]'--'that
> the pleader is entitled to relief.'" *Iqbal*,
> 129 S. Ct. at 1949.  This "plausibility"
> determination will be "a context-specific
> task that requires the reviewing court to
> draw on its judicial experience and common
> sense." *Id.*

*Fowler*, 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts.  As noted above, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Guirguis v. Movers Specialty Services, Inc.*, No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (quoting *Twombly*, 550 U.S. at 555) (not precedential).

Finally, the district court must extend the plaintiff an opportunity to amend before dismissing a complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

**2.   Motion to Strike Standard**

Federal Rule of Civil Procedure 12(f) provides that "[t]he

10

court may strike from a pleading an insufficient defense or any redundant, impertinent, or scandalous matter."

### B. *Defendants' Motion*

**1. ADEA**

Defendants first argue that Plaintiff's ADEA claim against Defendant Carmody must be dismissed because the ADEA does not provide for individual liability. (Doc. 15-2 at 4.)  We agree.

The Third Circuit Court of Appeal agreed with other Circuits that there is not individual liability under the ADEA in *Hill v Borough of Kutztown*, 455 F.3d 225, 246 n.29 (3d Cir. 2006) (citing *Horowitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 360 F.3d 602, 610 n.2 (7th Cir. 2001); *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674 (5th Cir. 2001); *Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995)); *see also*, *Parikh v. UPS*, No. 11-4482, 2012 WL 3186478, at *4 (3d Cir. Aug. 7, 2012) (not precedential) (citing *Hill*, 455 F.3d at 246 n.29).

Because the ADEA does not allow for individual liability, Plaintiff's ADEA claim against Defendant Carmody is properly dismissed.  Plaintiff's ADEA violation claim, Count I of her Amended Complaint (Doc. 11 at 23) goes forward as to Defendant WVHCS Retention Company only.

**2. Common Law Constructive Discharge**

Defendants next argue that Plaintiff's common law constructive discharge claim must be dismissed because it is preempted by the

11

Pennsylvania Human Relations Act ("PHRA"). (Doc. 15-2 at 4.)  We agree.

"The PHRA provides a statutory remedy that precludes assertion of a common law tort action for wrongful discharge based upon discrimination." *Clay v. Advanced Computer Applications, Inc.*, 559 A.2d 917, 918 (Pa. 1989) (citing *Householder v. Kensington Manufacturing Co.*, 520 A.2d 461 (Pa. Super. 1987)).  "Under *Clay*, [a plaintiff] may not pursue a common law claim of constructive discharge based on allegations of employment discrimination." *Welch v. Maritrans Inc.*, No. Civ. A. 00-2606, 2001 WL 73112, at *4 (E.D. Pa. Jan. 25, 2001).

Based on this authority, Plaintiff's common law constructive discharge claim is without merit and Count III of Plaintiff's Amended Complaint (Doc. 11 at 29) is properly dismissed.

**3.  Defamation**

Defendants next maintain that Plaintiff's defamation claim must be dismissed both because it is time-barred and Plaintiff has not identified a defamatory statement.  (Doc. 15-2 at 5.)  We agree that Plaintiff's defamation claim is properly dismissed.

Under Pennsylvania law, a claim for defamation must be brought within one year of publication or broadcast.  42 Pa. C.S. § 5523(1); *see also In re Philadelphia Newspapers, LLC*, No. 11-3257, ---F3d---, 2012 WL 3038578, at *9 (3d Cir. July 26, 2012).  Each broadcast is considered a separate "publication" and new cause of

action for purposes of a plaintiff's defamation claim statute of limitations.  *Graham v. Today's Spirit*, 468 A.2d 454, 457-58 (Pa. 1983).

Here Plaintiff asserts in the last paragraphs of the "Facts" section of her Amended Complaint that "in or about June and July, 2009, Nancy Bellas was told by Mr. Cantina that after 'discussing the matter' with Hospital Representatives, namely Defendant Carmody, that 'it would not be in the best interest of the Hospital' to rehire her to the needed positions."  (Doc. 11 ¶ 100.)  In the section of her Amended Complaint setting out her defamation claim, Plaintiff refers to events as occurring in 2010.  (Doc. 11 ¶¶ 140, 142.)

Through Defendants' brief, Plaintiff was made aware of the date discrepancy.  (*See* Doc. 15-2 at 7 n.5.)  Plaintiff did not correct Defendants' assumption that the 2010 date asserted was in error.  Because Plaintiff failed to correct Defendants' timeline and because no assertions made in the "Facts" section of Plaintiff's brief relate to a time after July 2009 (*see* Doc. 11 at 3-22), we assume the broadcast of the allegedly defamatory statements was July 2009 at the latest.  Plaintiff filed her Complaint (Doc. 1) on April 11, 2011.  Therefore, Plaintiff's defamation action was not filed within one year of broadcast and is properly dismissed as time-barred.

13

**4.    Damages**

Finally, Defendants argue that Plaintiff's demand for punitive damages under the ADEA or PHRA must be stricken because punitive damages are not available under these statutes and Plaintiff's demand for liquidated damages under the PHRA must be stricken because these damages are not available under this statute.  (Doc. 15-2 at 8.)  We agree in part.

In *Hoy v. Angelone*, 720 A.2d 745, 749 (Pa. 1998), the Pennsylvania Supreme Court clearly stated that the PHRA does not allow for punitive damages claims.  Thus Plaintiff's claim for punitive damages under the PHRA in Count II is improper.

The Third Circuit Court of Appeals held that "damages for 'pain and suffering' or emotional distress cannot properly be awarded in ADEA cases." *Rogers v. Exxon Research & Engineering Co.*, 550 F.2d 834, 842 (3d Cir. 1977), *overruled on other grounds by Smith v. Joseph Schlitz Brewing Co.*, 550 F.2d 834 (3d Cir. 1977).  Some courts have interpreted *Rogers* as holding that punitive damages are not available under the ADEA, *see McQuilkin v. Delaware River Port Authority*, Civil No. 11-652, 2011 WL 5325620, at *7 (D.N.J. Nov. 3, 2011), although the Third Circuit has never expressly ruled that punitive damages are unavailable under the ADEA, *see Argue v. David Davis Enterprises, Inc.*, Civil Action No. 02-9521, 2008 WL 4500097, at *3 (E.D. Pa. Feb. 15, 2008).  Both *McQuilken* and *Argue* point to several decisions from other circuits

14

and district courts within the Third Circuit which have ruled that the award of punitive damages is prohibited under the ADEA. *McQuilken*, 2011 WL 5325620, at *7 (listing cases); *Argue*, 2008 WL 450097, at *3 & n.2 (listing cases). Based on this weight of authority and Plaintiff's failure to argue otherwise, we concur that punitive damages are not available under the ADEA. Thus, Plaintiff's claim for punitive damages under the ADEA in Count I is improper.

Although liquidated damages are available under the ADEA for willful violations, *Potence v. Hazleton Area School District*, 357 F.3d 366, 372 (3d Cir. 2004) (citing 29 U.S.C. § 626(b); 29 U.S.C. § 216 (b)), the availability of liquidated damages under the PHRA is unclear. Defendants point to *Potoski v. Wilkes Univ.*, Civ. A. No. 3:06-2057, 2010 WL 3811973 (M.D. Pa. Sept. 22, 2010), in support of the assertion that liquidated damages are not available under the PHRA. (Doc. 15-2 at 8.) Indeed, *Potoski* so held based on the reasoning that punitive damages are not available under the PHRA and the Supreme Court and Third Circuit held in the ADEA context that liquidated damages are intended to be punitive in nature. 2010 WL 3811973, at *3 (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126 (1985); *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1095 (3d Cir. 1995)). However, another court within the Third Circuit held that the defendant was not entitled to dismissal of the plaintiff's PHRA liquidated damages

15

claim at the early stage of proceedings because no case law established that "liquidated damages are excluded from 'any other legal or equitable relief' expressly authorized in the PHRA." *Craig v. Thomas Jefferson University*, Civil Action No. 08-4165, 2009 WL 2038147, at *9 (E.D. Pa. July 7, 2009). Because the issue is not as straight forward as Defendants assert and because Defendants' sparse briefing does not sufficiently address matters this Court considers relevant to deciding the issue, we will follow *Craig's* path of not striking the demand for liquidated damages at the motion to dismiss stage.[4] *Id.* Rather, again as in *Craig*, we remind Defendants that they may raise the issue again at a later stage of the proceedings, "at which time the court would expect more robust briefing." *Id.*

### III. Conclusion

For the reasons discussed above, Defendants' Partial Motion to Dismiss/Motion to Strike Plaintiff's Amended Complaint (Doc. 15) is granted in part and denied in part. The motion is granted insofar as Defendant Carmody is dismissed from Count I, Count III for common law constructive discharge is dismissed, Count IV for defamation is dismissed, and Plaintiff's claims for punitive

---

[4] The fact that the ADEA allows for liquidated damages but not punitive damages renders further discussion of the *Potoski* analogy warranted. Similarly, discussion of the impact of the PHRA's allowance of "any other legal or equitable relief" is appropriate when considering the availability of liquidated damages under the PHRA.

16

damages under the ADEA and PHRA in Counts I and II are dismissed/stricken.  Based on the reasons for dismissal, allowing amendment of these claims would be futile.  Defendants' motion is denied insofar is it seeks dismissal of Plaintiff's claim for liquidated damages under the PHRA in Count II.  With this determination, Plaintiff's Amended Complaint (Doc. 11) goes forward as follows: Count I for Violation of the ADEA proceeds against Defendant WVHCS Retention Company only with Plaintiff's request for punitive damages stricken; and Count II goes forward in all respects except Plaintiff's request for punitive damages is stricken.  An appropriate Order is filed simultaneously with this Memorandum.

                                      <u>S/Richard P. Conaboy</u>
                                      RICHARD P. CONABOY
                                      United States District Judge

DATED: September 10, 2012