UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NANCY BELLAS,                          :
                                       :
        Plaintiff,                     :CIVIL ACTION NO. 3:11-CV-673
                                       :
        v.                             :(JUDGE CONABOY)
                                       :
WVHCS RETENTION COMPANY, et al.,       :
formerly known as WYOMING VALLEY       :
HEALTH CARE SYSTEM, INC.,              :
                                       :
and                                    :
                                       :
JAMES CARMODY, as a corporate agent:
of WVHCS RETENTION COMPANY,            :
formerly known as WYOMING VALLEY       :
HEALTH CARE SYSTEM, INC.,              :
                                       :
        Defendants.                    :
                                       :
_____

**MEMORANDUM**

Here we consider the two pending motions filed by Plaintiff:
Motion for Sanctions for Spoliation or, in the Alternative, a
Motion to Compel Full and Complete Answers to the Discovery
Requests (Doc. 55) filed on August 20, 2013; and Motion to Stay All
Action/Response by the Plaintiff, Nancy Bellas, to the Motion for
Summary Judgment until the Discovery Matters Have Been Fully
Addressed by this Court (Doc. 57) filed on September 3, 2013.  The
Court heard oral argument on the motions on September 17, 2013.
Thereafter, upon agreement of the parties, Magistrate Judge Thomas
M. Blewitt conducted settlement talks.  (*See* Doc. 63.)  These talks
proved unsuccessful.  Having suspended consideration of Plaintiff's
motions until completion of settlement talks, the Court now takes

up the matters which are ripe for disposition. For the reasons discussed below, Plaintiff's Motion for Sanctions for Spoliation or, in the Alternative, a Motion to Compel Full and Complete Answers to the Discovery Requests (Doc. 55) is deemed moot in part, granted in part and denied in part; and Plaintiff's Motion to Stay All Action/Response by the Plaintiff, Nancy Bellas, to the Motion for Summary Judgment until the Discovery Matters Have Been Fully Addressed by this Court (Doc. 57) is deemed moot.

## I. Background

### A.   Factual Background

The case was filed in this Court on April 11, 2011. (Doc. 1.) After multiple service problems, Defendants WVHCS Retention Company ("WVHCS") and James Carmody filed a Partial Motion to Dismiss/Motion to Strike Plaintiff's Amended Complaint. The following summary is derived from the Court's Memorandum on that motion.[1]

Plaintiff was employed with WVHCS and its predecessor as a full-time registered nurse since approximately 1975.[2] In October

---

[1]   Because Plaintiff did not file an opposition brief to Defendants' motion, she was deemed not to oppose the motion pursuant to Local Rule 7.6 of the Local Rules of Court of the Middle District of Pennsylvania. Therefore, the factual recitation found in Defendants' supporting brief (Doc. 15-2 at 2-3) was the basis for the background recitation in the Court's Memorandum.

[2]   According to Defendants, the former Wyoming Valley Health Care System, Inc., is now known as "WVHCS-Retention Company." The name "Wyoming Valley Health Care System" and substantially all of the assets of Wyoming Valley Health Care System, Inc., were

2008, Plaintiff went to the Price Chopper in Edwardsville, Pennsylvania, at approximately 11:15 p.m. following a sixteen (16) hour shift at the hospital. (Doc. 11 ¶ 16.) She parked in the fire lane when she went into the store and received a ticket for doing so. (Doc. 11 ¶ 19.) Plaintiff avers that she paid the ticket immediately but it was returned to her because she had failed to sign the citation. (Doc. 11 ¶ 20.) On or about November 26, 2008, Plaintiff went to the Edwardsville Police Department to pay the fine. (Doc. 11 ¶ 21.) Officer Michael Lehman was the attendant in the office. (Doc. 11 ¶ 22.) At some time prior to December 2, 2008, someone from the Edwardsville Police Department called Lisa Goble, a representative of the Human Resources Department ("HR") of WVHCS, and alleged that Plaintiff "had caused a 'ruckus' in the Edwardsville Police Department and that she had told Officer Lehman that if he or his associates were in need of care in the Hospital Emergency Room, they would 'have to wait.'" (Doc. 11 ¶ 27.) Plaintiff denies the allegation that she caused a ruckus. (Doc. 11 ¶ 28.)

Plaintiff's supervisor, Norma Janosky, told Plaintiff that the Edwardsville Police Department was insinuating that she was using the hospital as a tool, and that she would most likely face

_____

purchased by Wilkes-Barre Holdings, LLC, an indirect, wholly-owned subsidiary of Community Health Systems, Inc., of Franklin, Tennessee, as part of a transaction effective May 1, 2009. (Doc. 15-2 at 2 n.2.)

disciplinary action as she was representing the hospital in this context. (Doc. 11 ¶ 39.) When Plaintiff denied the allegations, Plaintiff was advised to speak with James Carmody, head of the hospital's HR Department. (Doc. 11 ¶ 40.)

Plaintiff avers that she received information that at some point before December 5, 2008, Edwardsville Police Chief David Souchick spoke to Defendant Carmody and told him that "the matter allegedly involving Plaintiff at the Edwardsville Police Department was no more than a 'misunderstanding' and that the matter should not proceed further." (Doc. 11 ¶ 43.) Plaintiff further avers that Defendant Carmody told Souchick that the matter was "now in the hands of HR." (Doc. 11 ¶ 44.)

An "Agreement" concerning Plaintiff's disciplinary terms was formalized on December 11, 2008. (Doc. 11 ¶ 59.) Plaintiff's discipline included the following: 1) suspension from January 5, 2009, through January 16, 2009; 2) the suspension would be relied upon as the primary basis for any subsequent (progressive) discipline for a period of three years beginning on January 5, 2009; 3) Plaintiff would write a letter of apology to the Edwardsville Police Department; 4) neither Plaintiff nor her union would file a grievance or any such action related to the disciplinary decision; 5) the terms of the Agreement did not establish precedent or suspend, modify, or terminate any provision of the collective bargaining agreement between WVHCS-Hospital and

4

the union; and 6) the determination by the hospital was strictly confidential.  (Doc. 11 ¶ 59.)

Defendants aver that Plaintiff was disciplined because of her statements.  (Doc. 15-2 at 2.)  Plaintiff contends that her discipline was really a result of her age and salary.  (Doc. 15-2 at 2 (citing Doc. 11 ¶¶ 61, 73).)  Plaintiff alleges that, as a result of the disciplinary action against her and the rumored "buy-out" of the hospital, she felt she was targeted for "extreme and/or unnecessary future action, including termination because of her age and longevity."  (Doc. 11 ¶ 73.)  She further explains that she felt "because of the potential sale of the Hospital, she would be a target based upon her age, her corresponding pay based upon her years of experience, and her ability to collect the amount of overtime, classifying her as one of the top five paid employees from [the Hospital]."  (Doc. 11 ¶ 74.)  Plaintiff alleges that "[f]inding no other available options, a lack of meaningful and appropriate communication from the Defendants, and with a likely risk of future termination for aforesaid reasons" Plaintiff submitted a letter to her supervisor stating that she was resigning from her full-time position but wanted to remain "per diem" in both the Endoscopy Unit and Emergency Room.  (Doc. 11 ¶ 75.)

In the beginning of January 2009, layoffs were beginning to take place at the hospital in anticipation of the merger.  (Doc. 11 ¶ 84.)  On January 20, 2009, Plaintiff requested to work additional

hours in the Emergency Room and she was assigned to do so. (Doc. 11 ¶ 88.) On January 21, Plaintiff's Endoscopy Unit supervisor, Ms. Janoski, told Plaintiff she could no longer do per-diem work in the Endoscopy Unit. (Doc. 11 ¶ 89.) She was told the directive came from Defendant Carmody. (*Id.*) On the same date, Plaintiff learned she was not allowed to work in the emergency room. (Doc. 11 ¶ 92.) Plaintiff learned that the disciplinary letter in her file would preclude any additional per diem or overtime work. (Doc. 11 ¶ 93.) She states that she "immediately secured further employment at a lower level." (Doc. 11 ¶ 94.) The footnote inserted following this assertion notes that Plaintiff took a job at Moses Taylor Hospital on December 17, 2009. (Doc. 11 ¶ 94 & n.3.)

In May 2009, Wyoming Valley Health Care System, Inc., transferred control of its assets to another entity, now known as WVHCS Retention Company. (Doc. 11 ¶¶ 95-96.) Plaintiff believes that Cornelius Catena replaced Dr. William Host as Chief Executive Officer. (Doc. 11 ¶ 98.) In June or July of 2009, Mr. Catena told Plaintiff that, after discussing the matter with Defendant Carmody, it would not be in the hospital's best interest to rehire her. (Doc. 11 ¶ 100.) Plaintiff believes that Carmody represented to others that Plaintiff had a number of prior disciplinary actions against her. (Doc. 11 ¶ 98.)

## B. Procedural Background

Based on the allegations set out above, Plaintiff set out four counts in her Amended Complaint: Count I against both Defendants for violation of the Age Discrimination in Employment Act ("ADEA"); Count II against both Defendants for violation of the Pennsylvania Human Relations Act ("PHRA"); Count III against both Defendants for Constructive Discharge; and Count IV against both Defendants for Defamation. (Doc. 11 at 23-41.) She filed the Amended Complaint on April 3, 2012.

Defendants filed their motion to dismiss on July 19, 2012. (Doc. 15.) Defendants made the following arguments: Plaintiff's ADEA claim against Defendant Carmody must be dismissed because the ADEA does not provide for individual liability (Doc. 15-2 at 4); Plaintiff's common law constructive discharge claim must be dismissed because it is preempted by the Pennsylvania Human Relations Act (*id.*); Plaintiff's defamation claim must be dismissed both because it is time-barred and Plaintiff has not identified a defamatory statement (Doc. 15-2 at 5); Plaintiff's demand for punitive damages under the ADEA or PHRA must be stricken because punitive damages are not available under these statutes (Doc. 15-2 at 8); and Plaintiff's demand for liquidated damages must be stricken because these damages are not available under the PHRA (*id.*).

The Court granted the motion in part and denied it in part.

(Doc. 20.)  By Order of September 10, 2012, the motion was granted insofar as Defendant Carmody was dismissed from Count I, Count III for common law constructive discharge was dismissed, Count IV for defamation was dismissed, and Plaintiff's claims for punitive damages under the ADEA and PHRA were dismissed/stricken in Counts I and II.  The Court denied the motion insofar is it sought dismissal of Plaintiff's claim for liquidated damages under the PHRA in Count II.  (*Id.*)  With this decision, the Court determined that Plaintiff's Amended Complaint (Doc. 11) goes forward as to Count I for Violation of the ADEA against Defendant WVHCS Retention Company only with Plaintiff's request for punitive damages stricken and Count II for PHRA violation goes forward against both Defendants except Plaintiff's request for punitive damages is stricken.  (Doc. 20.)

The parties agreed to mediation and the case was referred for mediation on October 23, 2012.  (Doc. 26.)  Mediation was initially delayed in November 2012 pending completion of limited discovery.  (Doc. 27.)  Mediation eventually took place in April 2013 and was not successful.  (Doc. 48.)

Beginning in December 2012, discovery issues arose.  (Doc. 28.)  Sanctions were imposed upon Plaintiff in connection with Defendant's costs incurred in filing the first motion to compel.  (*See* Doc. 33.)  Subsequent motions to compel and motions to stay discovery were resolved prior to the filing of the motions which

8

are considered here.

As noted above, The Court heard oral argument on the motions on September 17, 2013. Thereafter, upon agreement of the parties, Magistrate Judge Thomas M. Blewitt conducted settlement talks. (*See* Doc. 63.) These talks proved unsuccessful. Having suspended consideration of Plaintiff's motions until completion of settlement talks, the Court now takes up the matters which are ripe for disposition.

## II. Discussion

**a. *Motion for Sanctions for Spoliation or, in the Alternative, a Motion to Compel Full and Complete Answers to the Discovery Requests***

With this motion, Plaintiff asserts that Defendants did not provide certain requested discovery which is necessary to the prosecution of the case. (Docs. 55, 56.) Through the documents submitted by the parties (Docs. 55, 56, 61, 61-1) and the parties' oral presentation of the issues at the September 17, 2013, Oral Argument, Defendants' response to three interrogatories and one document request form the basis of Plaintiff's motion: Interrogatories 4, 5 and 6, and Document Request 3. At Oral Argument, Plaintiff's counsel withdrew requests related to Interrogatories 5 and 6. Therefore we deem related issues moot. We will now address Interrogatory 4 and Document Request 3.

## 1. Interrogatory 4: Compensation Ranking

Interrogatory 4 requests the following: "Please identify

specifically where Nancy Bellas ranked in terms of her compensation paid among all nurses employed by WVHCS for the years 2007 and 2008, and provide documentation supporting same." (Doc. 56-3 at 7.)

Defendants object to this request on several bases. (Doc. 61-1 at 14.) They first assert that the rate of pay for all nurses is not relevant, "especially to the extent the document request seeks this information for nurses who were not similarly situated." (*Id.*) Second, Defendants maintain the request improperly requires the Hospital to produce information belonging solely to another entity, Community Health Systems. (*Id.*) Third, Defendants argue Plaintiff has not asserted any claim for pay discrimination and her rate of pay is not relevant to her ADEA claim. (*Id.* (citing *Hazen Paper v. Biggins*, 507 U.S. 604 (1993); *Bernhard v. Nexstar Broadcasting Group, Inc.*, 146 F. App'x 582, 585 (3d Cir. 2005)).) Finally, Plaintiff avers that it did not rank its hundreds of nurses in terms of compensation and it would be unduly burdensome to ask it to do so now. (*Id.*)

This matter was discussed extensively at Oral Argument, with Plaintiff's counsel acknowledging that pay rates are not relevant in the typical ADEA case but arguing that this is not such a case. We disagree. Rather, because "salary is analytically distinct from [] age," *Bernard*, 146 F. App'x at 585 (citing *Hazen*, 507 U.S. at 611), even if salary were taken into account in this age

10

discrimination case, Defendants would not run afoul of the ADEA. Because relative compensation is not pertinent to whether Plaintiff was terminated because of her age, Plaintiff's request for this information is properly denied.

## 2. Document Request 3: Other Nurses Employed and/or Hired

Document Request 3 seeks the following:

> A detailed list of all nurses (regardless of whether they are RNs, LPNs, or other) employed and/or hired in any capacity, including as independent contractors from September 1, 2008 through December 31, 2010 by Wyoming Valley Health Care System, any of its affiliated companies, Community Health Systems or its affiliated companies. In providing the same, please provide the following: [name, date of birth, date of hire, position, rate of pay, department, date of termination and/or separation, type of nursing certification/education.]

(Doc. 56-6 at 6.)

This request was also extensively discussed at Oral Argument. Because Wyoming Valley Health Care System ceased operations on April 30, 2009, WVHCS Retention Company is not in possession of records after that date. *See supra* n.2. At Oral Argument Plaintiff withdrew the request as it pertains to documents generated after April 30, 2009. Therefore, by agreement of the parties, Defendants need not produce documents generated after that date. Further, for the reasons discussed above, pay rates are not relevant to Plaintiff's age discrimination claims and need not be produced. To the extent Defendants have not provided the required

documents, they are to do so within fourteen (14) days of the date of this Memorandum and simultaneously filed Order.

## 3. **Sanctions for Spoliation**

Based on the analysis set out above, we conclude Plaintiff's request for sanctions is properly denied.

## b. *Motion to Stay All Action/Response by the Plaintiff, Nancy Bellas, to the Motion for Summary Judgment until the Discovery Matters Have Been Fully Addressed by this Court*

Because the briefing schedule for WVHCS Retention Company and James Carmody's Motion for Summary Judgment (Doc. 53) was suspended by Court Order of August 28, 2013 (Doc. 60), and because the Court has addressed the outstanding issues related to interrogatory responses and document production, this motion (Doc. 57) is deemed moot. The Court will issue an Order setting out a briefing schedule for the pending summary judgment motion.

## III. Conclusion

For the reasons discussed above, Plaintiff's Motion for Sanctions for Spoliation or, in the Alternative, a Motion to Compel Full and Complete Answers to the Discovery Requests (Doc. 55) is deemed moot in part, granted in part and denied in part. The motion is deemed moot as to Interrogatories 5 and 6. The motion is granted in that Defendants are to produce documents requested in Document Request 3, excluding pay information, generated up to and including April 30, 2009. The motion is denied in all other respects. Plaintiff's Motion to Stay All Action/Response by the

12

Plaintiff, Nancy Bellas, to the Motion for Summary Judgment until the Discovery Matters Have Been Fully Addressed by this Court (Doc. 57) is deemed moot.  An appropriate Order is filed simultaneously with this Memorandum.


                                        S/Richard P. Conaboy
                                        RICHARD P. CONABOY
                                        United States District Judge

DATED: October 18, 2013